STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of Brian Hehir    }
                                     }
                                     }   Docket No. 130-6-00 Vtec
                                     }
                                     }

Decision and Order

Appellant Brian Hehir appealed from a decision of the then-Zoning Board of Adjustment (ZBA) of the City of Burlington, granting Appellee-Applicant Four Star Delivery Service, Inc. a conditional use permit to operate a food delivery service at 203 North Winooski Avenue. Appellant is an attorney who appeared and represented himself; Appellee-Applicant is represented by Alan A. Bjerke, Esq.; the City of Burlington is represented by Kimberlee J. Sturtevant, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence and the written memoranda and proposed findings, the Court finds and concludes as follows.

The subject property, 203 North Winooski Avenue, is located in the Residential-Medium Density zoning district, in which a retail business is neither a permitted nor a conditional use. A former occupant received a conditional use permit to operate a retail business selling sports cards and comic books in the 548-square-foot ground floor space of the building. That permit did not require off-street parking; as to parking, that permit estimated that 80% of the estimated 20 to 30 people per day would be pedestrian traffic, and that on-street parking would be sufficient for the remaining 20%. Contrary to Appellee-Applicant's arguments at trial, however, nothing in the former occupant's permit "grandfathered" four on-street parking spaces.

Appellee-Applicant moved its business in to the building in 1993, less than a year after the former retail business had vacated, and has operated there since that time. Appellee-Applicant applied for the present conditional use permit to establish a "restaurant order taking center business." There is no on-site parking for the business; the former business used on-street parking. Two apartments are located on the second floor of the building and two on the third floor.

North Winooski Avenue is a busy one-way southbound collector/distributor street, with two southbound lanes for traffic, plus curbside parking allowed on both sides of the street. Its peak times are during the morning and afternoon rush hours: 7-9 a.m. and 4-6 p.m. On-street parking spaces are available in front of 203 North Winooski Avenue and generally along the street. The absence of meters or a system of parking permits suggests that the availability of on-street parking is not generally a problem along the street near Appellee-Applicant's business.

Appellee-Applicant takes telephone orders for area restaurants, faxes the order to the restaurant, and dispatches drivers by two-way radio to pick up the order at the restaurant and deliver the order to the customer. Drivers use their own cars for deliveries, and come to the office location twice per day, at the beginning and end of their shifts. Appellee-Applicant employs six office staff (three full time and three part-time), of whom two to five are working in the office at any given time. Appellee-Applicant subcontracts to a maximum (in the peak fall season) of twenty drivers, of whom two to twelve are working at any given time. The business operates Monday through Thursday from 10:30 a.m. to 10:00 p.m.; Friday from 10:30 a.m. to 11:00 p.m.; Saturday from 11:00 a.m. to 11:00 p.m.; and Sunday from noon to 10:00 p.m. Its busiest time for vehicles parking at the business location is around closing, at 10:00 to 11:00 p.m., when the drivers return to " cash out."

Appellee-Applicant has acquired the right to use six parking spaces in an off-street forty-space lot at the Dairy Queen at 237 North Winooski Avenue, approximately two hundred feet away. The Dairy Queen parking lot exceeds its requirements by approximately nine spaces; the removal of these six from its calculations would not cause a violation at the Dairy Queen location. Appellee-Applicant has not actually needed to use these spaces as most of its office staff walks to work. Appellee-Applicant proposes to be responsible for plowing those spaces. Appellee-Applicant also proposes to limit the number of drivers coming to the office to a maximum of four at any one time, and to prohibit office employees who live within a half-mile radius from driving to work, except for employees responsible for making a night deposit. In addition, Appellee-Applicant proposes to prohibit drivers from parking in front of Appellant's property, 209 North Winooski Avenue, and from leaving their vehicles running in violation of state law, and from parking illegally within a block radius of the 203 North Winooski Avenue office. Drivers who break these rules three or more times within a 90-day period will not be offered further work by Appellee-Applicant. Appellee-Applicant instituted this policy, which resulted in two drivers being let go in approximately April of 2000; Appellee-Applicant has not experienced problems with successive driver violations since that time. Appellant has experienced the blockage of his driveway and the noise and fumes of idling vehicles many times in the two-and-a-half years prior to April of 2001, and has experienced problems with Appellee-Applicants' drivers disposing of cigarette butts and other trash from Appellee-Applicant's operations on the ground in the area.

Appellee-Applicant's proposal represents a modification to the preexisting nonconforming retail[1] use, requiring conditional use approval under § 5.1.8. It must also be analyzed under the last sentence of § 5.1.8 as to whether it is " less harmful or detrimental to the neighborhood" than was the prior use.

Conditional Use Approval (§ 17.1.5)

The proposal will have no effect on the capacity of existing or planned community facilities, nor on the utilization of renewable energy resources.

We must analyze the traffic to be generated by the proposal separately from the parking that may be required by the proposal. The traffic generated by the proposal will have no adverse effect on traffic on roads and highways in the vicinity. The volume of traffic calculated under accepted

industry standards as generated by the prior retail use was 24 vehicle trip ends as compared with 7 for the proposed office use. These industry standards may not accurately reflect the actual maximum vehicle trips estimated to be generated by Appellee-Applicant's business, based on the description of the actual business activities. However, even using the maximum actual numbers of twelve drivers going to and leaving the facility in a day (24 vehicle trip ends), the proposal will not adversely affect traffic on North Winooski Avenue. There was evidence that North Winooski Avenue is a busy collector street, that its peak hours do not coincide with the peak hours for traffic at Appellee-Applicant's business, and that the traffic generated by the proposal will have no effect on the traffic on North Winooski Avenue or any other road or highway in the vicinity.

If parking demand generated by the proposal is adequately provided for, the proposal will also have no adverse effect on the character of the area affected. While the zoning district in which the affected area is located is zoned for medium-density residential development, the present character of the particular street on which the proposal is located is a busy mixed-use collector street, with multi-family housing, a few single-family houses, and commercial uses; two neighborhood convenience stores, a bottle redemption center, a beauty salon, a food shelf, a Dairy Queen, and an auto parts store are located within a short distance of the proposal. The proposal is located in an existing building whose appearance is not proposed to be changed. In the past, the parking and idling of Appellee-Applicant's drivers' cars has caused conflicts with neighbors, in particular in front of Appellant's property and in Appellant's and another neighbor's driveways. To address these problems, Appellee-Applicant now proposes to provide six off-street parking spaces for the office staff in the parking lot of a nearby business, to schedule the trips of drivers coming to the business so that no more than four trips would occur in any hour, and to prohibit drivers from pulling into the adjacent driveway, from idling their vehicles, and from parking illegally near the business location. With these limitations in place, the proposal will not adversely affect the character of this area of North Winooski Avenue.

The proposal will have no adverse effect on other bylaws, and in particular complies with height limits and parking requirements as required by § 20.1.6(b). The antenna located on the building for two-way radio dispatching is a six-foot-tall, half-inch-diameter single-mast antenna mounted on the back roof of the building. As the antenna occupies less than 10% of the roof area, and lacks a satellite dish or commercial advertising, it is exempt from the height limitations under § 5.3.13(d) of the Zoning Ordinance. If a separate permit is required for the antenna, that permit is beyond the scope of the present application.

The parties agreed at trial that six parking spaces are required by the proposal. Section 10.1.5 requires that the additional spaces beyond those provided for the prior use be provided in accordance with the requirements of Article 10 relating to parking, and that a waiver may be requested under § 10.1.19. No waiver has been requested; rather, Appellee-Applicant has contracted with the Dairy Queen to provide six spaces in its lot, approximately 200 feet away. In order for those spaces to comply with the Ordinance, they must be available to Appellee-Applicant year-round, regardless of Appellee-Applicant's actual need for them on any given day. Accordingly, to comply with the Zoning Ordinance, Appellee-Applicant must keep those spaces clear of snow and, during seasons when the Dairy Queen is closed for business, must put up signage reserving those six cleared spaces for the use of Appellee-Applicant. Appellee-

Applicant must arrange for office employees to use those spaces if they are driving to work, so that the on-street parking near Appellee-Applicant' s business is kept reasonably available for the parking required by Appellee-Applicant' s drivers, except for security reasons when an office employee must carry quantities of cash to or from a vehicle.

Degree of Harm or Detriment to the Neighborhood

With the conditions regulating parking imposed in connection with this application, the proposal will be less harmful or detrimental to the neighborhood than the prior use, which involved approximately 24 pedestrian and six automotive visits daily (60 trip ends), and which provided for no off-street parking.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that conditional use approval is GRANTED to Appellee-Applicant to operate its business at 203 North Winooski Avenue. The following reasonable conditions and safeguards are necessary to implement the purposes of this chapter and the zoning regulations. § 17.1.5(b).

1. Appellee-Applicant shall obtain and maintain the rights to use six parking spaces in an off-street forty-space lot at 237 North Winooski Avenue. Any discontinuance of the rights to these spaces or request to substitute other off-street spaces shall require an amendment of this conditional use approval or an application for a parking waiver. Appellee-Applicant shall keep those spaces clear of snow, and during any extended period that the Dairy Queen is closed for business, shall post sufficient signs to indicate that the cleared spaces are reserved for the use of Appellee-Applicant.

2. Appellee-Applicant shall require that any office employees who drive to work use those off-street spaces, except for security reasons when an office employee must carry quantities of cash to or from a vehicle.

3. Appellee-Applicant shall schedule its drivers' trips to the office so as to limit the number of drivers parking on the street near the office to a maximum of four at any time.

4. Appellee-Applicant shall prohibit its drivers from parking in front of Appellant' s property (209 North Winooski Avenue), from blocking any nearby driveway, and from pulling into or leaving a vehicle in any nearby driveway, whether or not that vehicle is running or any occupant remains with the vehicle.

5. Appellee-Applicant shall prohibit its drivers from leaving a vehicle idling or with its engine running within a block radius of the office, from parking illegally within a block radius of the office, and from dumping any trash, including cigarette butts and delivery slips, within a block radius of the office. Appellee-Applicant shall make provision for trash disposal in or near the building, available to drivers when they return to cash out at the end of their shifts.

Dated at Barre, Vermont, this 28th day of December, 2001.

_____
Merideth Wright
Environmental Judge


## Footnotes

[1]    It has changed from a retail use with on-site office facilities, emphasizing the retail use, to an office/retail use emphasizing the office functions, as the retail deliveries are made off-site. It cannot be classified as a use similar to a taxi terminal, as Appellant argues, because the drivers do not return to the site between deliveries and they use their own vehicles, that is, vehicles are not stored or serviced at the site.